STEWART AND HORTON TRUST ACCOUNT, STEWART AND HORTON, A PARTNERSHIP AS AGENTS FOR NEVADA CREDIT RATING BUREAU, INC., A NEVADA CORPORATION, AND NEVADA CREDIT RATING BUREAU, INC., A NEVADA CORPORATION, APPELLANTS, v. ALBERT A. AUTRAND AND DESERT HILLS MOTEL, RESPONDENTS.

No. 4518

November 9, 1962                    375 P.2d 750

*Stewart, Horton & McCune* and *Donald Stuart Bab,* of Reno, for Appellants.

*William J. Crowell,* of Carson City, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

On June 5, 1961, Autrand drew a check on the First National Bank of Nevada for $1,200 payable to the order of the sheriff of Ormsby County. The sheriff accepted the check, endorsed it in blank and mailed it to attorneys Stewart and Horton who, in turn, presented it for payment. It was not paid, but was returned with the notation on the face of the check, "payment stopped." Subsequently, Stewart and Horton commenced an action upon the check against Autrand, the maker thereof, claiming to be the holders of a negotiable instrument and entitled to recover thereon. Autrand answered, alleging lack of consideration and fraud as defenses and that the check was given in payment of his bid at an execution sale. Following presentation of the plaintiffs' case in chief, Autrand moved for an involuntary dismissal under NRCP 41(b). His motion was granted. The trial court reasoned that an execution sale must be for cash; a check is not cash but merely a promise to pay. Furthermore, NRS 21.160 provides the sole remedy should a purchaser refuse to pay the amount bid by him, i.e., another sale by the officer to the highest bidder, the reneging bidder at the first sale being

liable for any loss occasioned by his refusal to pay. This appeal is from the judgment of dismissal thus entered.

1. *The parties' contentions.* In seeking a reversal of the judgment, Stewart and Horton direct our attention to the nature of the action, a suit by them as the holders of a negotiable instrument. They contend that there is no infirmity in the instrument, nor any defect in the title of the sheriff who negotiated it; that they are not only the holders thereof, but holders in due course. Additionally, they argue that the alleged defenses of fraud and lack of consideration are not made out in the evidence. Finally, they complain of the lower court's view that the sole remedy available to them is to request another sale by the sheriff. The respondent Autrand insists that the dismissal below was properly granted because the record establishes that Stewart and Horton were not holders in due course; that the alleged defenses of fraud and lack of consideration were established; and that, in any event, NRS 21.160 designates the only remedy available to a judgment creditor in the circumstances. In discussing these contentions we initially mention that, on review of a dismissal judgment entered at the close of the plaintiffs' case, we must view the record in a light most favorable to appellants, the plaintiffs below. Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 291 P.2d 1054; Corn v. French, 71 Nev. 280, 289 P.2d 173.

2. *There is no evidence of fraud, or the lack or failure of consideration.* The record discloses that Stewart and Horton, as attorneys for Nevada Credit Rating Bureau, Inc., obtained a default judgment against Cloy C. Hillman and another for the approximate amount of $3,000. Seeking to satisfy that judgment the attorneys requested the sheriff of Ormsby County to sell at execution sale Hillman's interest in certain real property in Ormsby County. The Ormsby County assessor had furnished the attorneys a legal description of the Hillman property to enable accurate preparation of the notice of sale. On the day of the sale and just before bids were requested, one of the persons present stated that he

held a deed of trust on the property; another said that he no longer owned the property. The statements were overheard by attorney Stewart and, presumably, also by Autrand who was nearby. Stewart did not then know the people who made the statements. He subsequently learned that the individual who said that he no longer owned the property was the judgment debtor Hillman. The sale was conducted, both Stewart and Autrand bidding. The sheriff struck off the property to Autrand who submitted the highest bid of $1,200. He gave a check for that amount, as hereinbefore related, and subsequently notified the bank not to honor it when presented for payment. No representation as to the judgment debtor's interest in the property was made by attorney Stewart to Autrand, nor was information concealed. If either of them harbored a doubt as to the judgment debtor's interest, it came about as the result of the statements made by persons then unknown and uttered just before the sale was conducted.

Autrand argues that, under such circumstances, Stewart and Horton could not have acted in "good faith" in accepting the check from the sheriff, and were not holders in due course. Furthermore, he urges that fraud of a nature providing a defense against an endorsee of a negotiable instrument was established. There is no evidence in the record to support such a charge. To the contrary, the evidence establishes that attorney Stewart, acting upon the county assessor's representation as to Hillman's title, caused the sale to occur; that he acted in good faith throughout. Indeed, Autrand never testified, presumably because the motion for involuntary dismissal was made and granted before the defense was to put on its case. Hence, the record does not tell us why he stopped payment on the check. We will not speculate as to this. Nor will we guess as to the judgment debtor's interest in the property. The posture of this case on review compels us to infer that the judgment debtor had an interest which was subject

to sale upon execution. The assessment roll so indicated.[1] Therefore, we are not impressed with Autrand's contention, based only upon an inference favorable to him, that he stopped payment because the judgment debtor had no property interest to convey. Nor do we decide whether he was at liberty to stop payment without incurring liability to one holding his check, had such proof been produced.

It is clear to us that the check was complete and regular on its face; that Stewart and Horton received it in good faith; that they are presumed to have given value for it, NRS 92.031; that the check was not infirm, nor was the title of the sheriff thereto defective; hence, upon the record before us, admitting the truth of their evidence, they are holders in due course of that instrument. NRS 92.059. As indicated, there is nothing in the record to support Autrand's averred defense of fraud. As to the assertion that there was either an absence or a failure of consideration, again we detect nothing in the evidence to support such claim. The consideration for Autrand's promise to pay for the property, given in the form of a check, was the sheriff's promise to convey the debtor's interest, made when he struck off the property to Autrand as the highest bidder. An executory contract was then made. Dazet v. Landry, 21 Nev. 291, 30 P. 1064; cases collected in 11 A.L.R. 543. The reciprocal promises constituted the consideration. Nor did the consideration subsequently fail. The patent reason for the sheriff's failure to convey the debtor's property interest to Autrand, was Autrand's prior repudiation of the executory contract; his direction to the bank not to honor the check which he had given for the property. In any event, the absence or failure of consideration, if established, would not be a defense as against a holder in due course. NRS 92.035; Gross

[1]Accordingly, we are not concerned on this appeal with the ramifications of caveat emptor as applied to a purchaser at execution sale who bids for property in which the judgment debtor has no interest. See comment in 35 Georgetown Law Journal 376.

v. Lamme, 77 Nev. 200, 361 P.2d 114; Allen v. Hernon, 74 Nev. 238, 328 P.2d 301.

Finally, the knowledge of attorney Stewart that the check had been executed in exchange for an executory promise to convey did not affect the negotiability of the check nor place him under a duty to inquire whether the conveyance had or had not been made. Britton, Bills & Notes, p. 450 (1943). His status as a holder in due course (and the status of his law partner Horton) was secure in the absence of knowledge *prior* to their acceptance of the check, of a breach of the executory contract by either party thereto. See Prentice v. First National Bank of Roff, 101 Okla. 232, 224 P. 963; cf. Drukker v. Howe & Haun Invest. Co., 136 Cal.App. 437, 29 P.2d 289; cases collected in 100 A.L.R. 1357. The record does not disclose such knowledge on their part.

3. *The remedy of resale provided by the execution statute does not preclude suit upon a negotiable instrument by a holder in due course.* The lower court based its judgment of dismissal upon the grounds that Autrand did not pay cash upon acceptance of his bid and that NRS 21.160 provides the sole remedy available to the judgment creditor, or his agent, in the circumstances here present, namely, another sale by the officer, in which event Autrand, as the reneging bidder at the first sale, would be responsible only for the loss occasioned by the repudiation of his promise to pay. The authorities cited to support this position do not involve the delivery to the officer of a negotiable instrument in payment of the bid and, for that reason, are not in point. See Dazet v. Landry, 21 Nev. 291, 30 P. 1064; Sweeney v. Hawthorne, 6 Nev. 129; Bell v. Redwine, 98 Cal.App. 784, 277 P. 1050. NRS 21.160 should not be construed to preclude suit by a holder in due course upon a negotiable instrument given by a purchaser at execution sale. Rights in addition to those provided by that statute come into being when a negotiable instrument is used to pay the amount bid.[2]

---

[2]NRS 92.064 provides: "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Though not on "all fours" factually, the following cases involving the delivery of a check by the high bidder in payment of his bid, support this view. Sutton v. Baldwin, 146 Ind. 361, 45 N.E. 518; Meherin v. Saunders, 131 Cal. 681, 63 P. 1084, 54 L.R.A. 272. The free circulation of negotiable paper is to be encouraged. Our daily business is primarily carried on by its use. We are certain that this is true, as well, in the conduct of execution sales. Though the officer and judgment creditor may insist that the high bidder pay in cash, and not by check, Dazet v. Landry, supra, it is likewise true that they may waive their right to receive cash in hand and accept the bidder's check in lieu thereof. Meherin v. Saunders, supra; Sutton v. Baldwin, supra; Cramer v. Oppenstein, 16 Colo. 504, 27 P. 716; cf. Metz v. Hicklin, 126 Kan. 516, 268 P. 823. This was done in the case at bar, with the resulting consequences provided for by the Negotiable Instruments Law.

We conclude that the judgment below must be reversed and the cause remanded for new trial.

McNamee, J., concurring:

I concur in the result.

Appellants recovered judgment against Hillman and another. To satisfy said judgment they levied upon land in Ormsby County purportedly owned by Hillman. At the execution sale of said land it was announced in the presence of respondent Autrand by Hillman that he did not own the land and it otherwise came to the attention of the bidders that there was some doubt as to the title thereto. Nevertheless, Autrand made the highest bid therefor in the sum of $1,200 and the sheriff announced that the land was sold to him for said sum. The sheriff accepted at that time from respondents their check in the sum of $1,200 which he endorsed in blank and mailed to appellants in partial satisfaction of their judgment. The check was dishonored upon presentation for payment, because respondents had stopped payment, and this suit on the check was thereupon commenced against respondents.

In their answer to the complaint respondents denied that there was any consideration for the check and alleged fraud as an affirmative defense.

The only affirmative allegations of respondents pertaining to their defenses of lack of consideration and fraud consist of the averments that the check was given by them in payment of their bid at an execution sale of certain real property which, at the time of the sale, was encumbered by a deed of trust and in which property the judgment debtor had no interest subject to sale, and that therefore when they made the highest bid and gave their check to the sheriff in the amount thereof they could receive no interest in the property by a subsequent delivery of a certificate of sale or sheriff's deed. The fraud consists of allegations that appellants by fraudulent representations induced respondents to make the highest bid.

The evidence presented by appellants consisted of the testimony of the sheriff who identified the check and related that he received it from Autrand and endorsed and delivered it to appellants in connection with the sale of the property in question. Appellant Stewart testified that he received the check and that it was not paid upon presentment; that he knew the check was given by respondent Autrand to the sheriff at the time of the sale of the property to Autrand; that at the sale both he and Autrand were bidding; that the county assessor had told him that Cloy C. Hillman, the judgment debtor, was the owner, but that he had not otherwise checked the title of the property prior to the sale; that he heard a man named Kolb state to the general crowd at the time of the sale that "I hold a trust deed to this property," that Hillman stated at that time, "I don't even own the property," to which Stewart replied, "Well, we'll see"; that thereupon the bidding took place and after several bids the property was sold to Autrand; and that Stewart left immediately after the sale and did not see the delivery of the check to the sheriff.

Upon such evidence, the appellants rested, and the lower court granted respondents' motion for an involuntary dismissal of the action. The record discloses that the order of dismissal was not based upon the defenses of either fraud or lack of consideration as

specifically alleged. Indeed it could not have been, because the evidence to no extent supported said specific allegations. The court based its decision upon the ground that the sheriff in accepting a check in lieu of cash contrary to law, which check was later dishonored, had as his sole remedy that provided by NRS 21.160, to wit, a proceeding against Autrand to recover any loss which might result from a resale of the property; that appellants took the check with knowledge of the sheriff's sole remedy and that, therefore, they were not entitled to recover on the check in an action against respondents, the makers thereof. It is to be noted that the lower court, in deciding that NRS 21.160 provides the sole remedy available to the sheriff when a purchaser refuses to pay the amount of his bid, is silent as to the rights, if any, of the judgment creditor under such circumstances, as distinguished from the sheriff, and particularly of a judgment creditor in the position of the appellants who have received from the highest bidder, through the sheriff as intermediary, a negotiable instrument for the amount bid. Whether the provisions of NRS 21.160 would constitute a defense to the check if properly pleaded is a question which, because of the present state of the record, should not now concern this court.

The action of the lower court in dismissing the complaint based upon a defense outside the pleadings was erroneous even though it resulted from respondents' motion to dismiss, because appellants being holders of a negotiable instrument valid on its face are deemed prima facie to be holders in due course. NRS 92.066. If in fact they are holders in due course, they would be entitled to recover on the instrument. Respondents have not yet had the opportunity to present evidence in support of their defenses of fraud and lack of consideration as alleged which they are entitled to do in order to attempt to rebut said presumption contained in NRS 92.066. A new trial, therefore, must be ordered. Respondents thereupon would be afforded an opportunity to amend their answer, if they so desire, so as to plead any further defense which might be available to them under NRS 21.160.

456

BADT, C. J., concurring:

I concur in the conclusions reached by both my associates.

In my opinion, however, this appeal presents the single question whether the facts within the knowledge and the facts with whose knowledge they are charged destroy the position of appellants as holders in due course without knowledge of infirmities.

Mr. Stewart knew or was charged with the knowledge of the following matters: that an attendant at the sale (later identified as one Kolb) claimed to have a trust deed upon the property offered for sale; that another attending the sale (later identified as the judgment debtor Hillman) disclaimed any interest in the property; that Autrand was present and heard these declarations and that Stewart knew that Autrand had heard them; that under the system of assessments of real property in this state the assessor must "close his books" for a period of time before making up his assessment roll, with the result that there is an interim period during which transfers of real estate on the books of the county recorder are not reflected in the assessment rolls; that Stewart and Autrand kept making respective bids until Autrand had made his final high bid of $1,200; that the sheriff (except possibly in the absence of waiver) was authorized to receive from Autrand, the successful bidder, cash and only cash (Dazet v. Landry, 21 Nev. 291, 30 P. 1064) ; that Autrand gave the sheriff his check on the bank, payable to the sheriff; that the transaction was consummated only if and when the check was paid by the bank; that Autrand (apparently having discovered the complete absence of title in the judgment debtor) defaulted in his bid by stopping payment on the check; that upon such default it was the duty of the sheriff to again sell the property to the highest bidder after again giving the statutory notice; that the sheriff was then authorized to recover the amount of the loss, with costs, for the benefit of the party aggrieved, by motion heard in a

summary manner (Sweeney v. Hawthorne, 6 Nev. 129, Combined Vol. 5–6–7 Nev. 466).

However, respondent has been unable to submit a single authority to the court, nor has the court's independent research brought one to light, in which circumstances such as those recited have been held to constitute an infirmity in the paper such as to deprive appellants of their presumed status as holders in due course. Thus we are compelled to hold that the order for involuntary dismissal was error, and that the case must be retried, with opportunity to the defendant to prove his asserted defenses.